IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

ANTHONY FARLEY,

          Plaintiff,

v.                                                CIVIL ACTION NO. 2:20-cv-00747

LINCOLN COUNTY COMMISSION, et al.,

          Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed *Defendants Lincoln County Commission D/B/A Lincoln County Sheriff's Office and Gary Linville Individually and in His Capacity as Lincoln County Sheriff's Motion for Summary Judgment* (Document 31) and *Defendants Lincoln County Commission D/B/A Lincoln County Sheriff's Office and Gary Linville Individually and in His Capacity as Lincoln County Sheriff's Memorandum of Law in Support of Their Motion for Summary Judgment* (Document 32), as well as the attached exhibits. The *Motion* was filed on February 25, 2022. To date, the Plaintiff has not filed a response. For the reasons stated herein, the Court finds that the motion should be granted.

**FACTS**

The Plaintiff, Anthony Farley, filed his *Complaint* (Document 1-1) against the Defendants, the Lincoln County Commission, d/b/a Lincoln County Sheriff's Office, and Gary Linville, individually and in his official capacity as Lincoln County Sheriff. The Defendants removed the case from the Circuit Court of Lincoln County to federal court on November 13, 2020.

1

The Plaintiff's complaint includes the following claims: Count One – Wrongful Discharge; Count Two – Violation of Procedural Due Process; Count Three – Violation of Human Rights Act, Age Discrimination; and Count Four – Intentional Infliction of Emotional Distress.

Mr. Farley was hired as a security guard at the Lincoln County Courthouse in 2013. He worked at the metal detector and checked people entering the building for weapons, and sometimes served as a courtroom bailiff.

The County Commission passed a budget that eliminated Mr. Farley's position as of July 2018. In or around March 2018, Sheriff Linville informed Mr. Farley that he would be laid off because of budget constraints. Sheriff Linville testified that after Mr. Farley learned that his position was being eliminated, he began missing work or arriving late without providing notice to his supervisors. He verbally discussed the issue with Mr. Farley and believes that Mr. Farley's direct supervisors also spoke with him about the need for advance notice of time off. The Sheriff explained that lack of notice made it difficult to shift employees in the small department to ensure coverage. In June 2018, Sheriff Linville terminated Mr. Farley's employment. Mr. Farley went to a doctor's appointment, and when he returned home, there was a message on his home answering machine from Sheriff Linville, informing him that he had been discharged and instructing him to return his equipment. He did so but had no conversations with the Sheriff or anyone else regarding his employment at that time. The secretary for the Sheriff's Department provided him with a letter signed by Sheriff Linville stating that he was "hereby dismissed from the Lincoln County Sheriff's Department effective immediately for excessive absentism as well as a lack of adequate and timeful notification of absentism." (Def.'s Ex. 3, Document 31-3.) Mr. Farley did not file a grievance with the County Commission regarding his dismissal.

On a couple of occasions, Sheriff Linville made comments to Mr. Farley about his age.[1] Mr. Farley was in his mid-fifties, while Sheriff Linville was under forty. Mr. Farley does not recall the exact content or timing of the comments. Sheriff Linville testified that two of Mr. Farley's superior officers were approximately his age or older.

## STANDARD OF REVIEW

The well-established standard in consideration of a motion for summary judgment is that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)–(c); *see also Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 169 (4th Cir. 2014). A "material fact" is a fact that could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). A "genuine issue" concerning a material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *FDIC v. Cashion*, 720 F.3d 169, 180 (4th Cir. 2013); *News & Observer*, 597 F.3d at 576.

The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322–23. When determining whether summary judgment is appropriate, a court must view all of the factual evidence, and any reasonable inferences to be drawn therefrom, in the light most favorable to the nonmoving party. *Hoschar*, 739 F.3d at 169. However, the non-moving

---

[1] The Defendants contest whether such comments were made.

party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. "At the summary judgment stage, the non-moving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action." *Perry v. Kappos*, No.11-1476, 2012 WL 2130908, at *3 (4th Cir. June 13, 2012) (unpublished decision) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).

In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter," *Anderson*, 477 U.S. at 249, nor will it make determinations of credibility. *N. Am. Precast, Inc. v. Gen. Cas. Co. of Wis.*, 2008 WL 906334, *3 (S.D. W. Va. Mar. 31, 2008) (Copenhaver, J.) (citing *Sosebee v. Murphy,* 797 F.2d 179, 182 (4th Cir. 1986). If disputes over a material fact exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate. *Anderson*, 477 U.S. at 250. If, however, the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment should be granted because "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23.

## DISCUSSION

The Defendants argue that Sheriff Linville in his official capacity is not a proper party because West Virginia law authorizes suit only against county commissions for claims regarding county officials.[2] The Defendants further argue that they are entitled to judgment as to Count 1

---

[2] Because the Court finds that the Defendants are entitled to summary judgment on the merits of each claim, the Court does not reach the motion regarding the official capacity claims against Sheriff Linville.

because county personnel policies are "not a source of public policy giving rise to a common law wrongful termination claim." (Def.'s Mem. at 10.) They argue that Mr. Farley's due process claim in Count 2 fails because he did not take advantage of the grievance process to challenge his termination. Next, they seek judgment as to Count 3 asserting that Mr. Farley lacks evidence that he was terminated because of his age. Finally, they argue that the intentional infliction of emotional distress claim is unsupported by any facts showing that "the conduct effecting his termination was so extreme or outrageous as to exceed the bounds of decency." (*Id.* at 16.)

The Plaintiff did not file a response to the motion for summary judgment. Federal Rule of Civil Procedure 56(e) provides that, if a party fails to address a factual assertion, the court may "grant summary judgment if the motion and supporting materials–including the facts considered undisputed–show that the movant is entitled to it." The Defendants, as the moving party, bear the initial burden of demonstrating that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. Thus, the Court will determine whether they have met that initial burden as to each claim.

### A. Count 1 – Wrongful Discharge

In West Virginia, "an employment unaffected by contractual or statutory provisions to the contrary, may be terminated, with or without cause, at the will of either party to a contract of employment." *Wright v. Standard Ultramarine & Color Co.*, 90 S.E.2d 459, 468 (W. Va. 1955). In *Harless v. First National Bank in Fairmont*, the West Virginia Supreme Court carved out an exception to that general rule, stating,

> The rule that an employer has an absolute right to discharge an at will employee must be tempered by the principle that where the employer's motivation for the discharge is to contravene some

> substantial public policy principle, then the employer may be liable to the employee for damages occasioned by this discharge.

Syl., 246 S.E.2d 270, 271 (W. Va. 1978). Four factors guide a court's determination of whether an employee has successfully presented a *Harless* claim:

> (1) whether clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in common law; (2) whether dismissing employees under circumstances like those involved in plaintiff's dismissal would jeopardize the public policy; (3) whether dismissal was motivated by conduct related to the public policy; and (4) whether employer lacked overriding legitimate business justification for dismissal.

*Wiley v. Asplundh Tree Expert Co.*, 4 F.Supp.3d 840, 844-45 (S.D. W. Va. 2014) (Johnston, J.) (*quoting Feliciano v. 7-Eleven, Inc.*, 559 S.E.2d 713, 723 (W. Va. 2001)). "Under this test, a plaintiff cannot simply cite a source of public policy and then make a bald allegation that the policy might somehow have been violated. There must be some elaboration upon the employer's act jeopardizing public policy and its nexus to the plaintiff's discharge." *Herbert J. Thomas Mem'l Hosp. Ass'n v. Nutter*, 795 S.E.2d 530, 541 (W. Va. 2016).

In Count 1, Mr. Farley alleged that his termination violated public policy, identifying "the Lincoln County Commission personnel policies adopted pursuant to a Federal Court Order, entered December 14, 1990." (Compl. at ¶18.) The Defendants have challenged whether county personnel policies are "manifested in a state or federal constitution, statute or administrative regulation, or in common law," as required to state a *Harless* claim. As a general matter, personnel policies, employee handbooks, and similar documents do not constitute substantial public policies, and firing an employee in contravention of the procedural rules contained in such documents is not "motivated by conduct related to the public policy." The Plaintiff has presented

no facts that would support finding that the Lincoln County Commission personnel policies meet the factors established by the West Virginia Supreme Court of Appeals. Therefore, the Court finds that the Defendants are entitled to summary judgment as to Count 1.

### B. Count 2 – Procedural Due Process

In Count 2, Mr. Farley alleges that his termination violated due process because he was not provided with a written notice advising him of the reasons for the termination at least fifteen days prior to the effective date of his termination. The Defendants have presented evidence that a grievance process was available to the Plaintiff if he wished to challenge his termination, and he did not do so. Both state and federal precedent require that a plaintiff take advantage of available administrative processes in order to state a claim for failure to provide procedural due process. *See, e.g.*, *Manion v. N. Carolina Med. Bd.*, 693 F. App'x 178, 181 (4th Cir. 2017) (unpublished); *Subramani v. W. Virginia Univ. Bd. of Governors*, No. 14-0924, 2015 WL 7628720, at *5 (W. Va. Nov. 20, 2015) (unpublished).[3] The Defendants have put forth evidence showing that Mr. Farley did not exhaust the grievance procedure available to him, and he has put forward no contravening evidence. Therefore, the Court finds that the motion for summary judgment as to Count 2 should be granted.

### C. Count 3 – Violation of Human Rights Act, Age Discrimination

In Count 3, Mr. Farley alleged that his termination was based in whole or in part on his age in violation of the West Virginia Human Rights Act, W. Va. Code §5-11-9 (WVHRA). That statute prohibits discrimination based on, inter alia, age, unless based upon a bona fide

---

3 The Court notes that there is little in the record to establish whether the Plaintiff had a "protectible property interest in continued employment" given the general rule of at-will employment. *See*, *Jenkins v. Weatherholtz*, 909 F.2d 105, 107–09 (4th Cir. 1990)

7

occupational qualification. W. Va. Code § 5-11-9. The analysis for employment discrimination cases under the WVHRA follows the same burden-shifting framework laid out in *McDonell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973) for analysis of federal claims brought under Title VII of the Civil Rights Act of 1964. *Hall v. Gestamp W. Virginia, LLC*, No. 2:20-CV-00146, 2021 WL 3552222, at *4 (S.D.W. Va. Aug. 11, 2021) (Copenhaver, S.J.), *appeal dismissed*, No. 21-1995, 2022 WL 726965 (4th Cir. Jan. 3, 2022). The plaintiff must first make a prima facie case: "(1) That the plaintiff is a member of a protected class. (2) That the employer made an adverse decision concerning the plaintiff. (3) But for the plaintiff's protected status, the adverse decision would not have been made." Syl. Pt. 1, *Knotts v. Grafton City Hosp.*, 786 S.E.2d 188, 190 (W. Va. 2016). "The 'but for' test of discriminatory motive is merely a threshold inquiry, requiring only that a plaintiff show an inference of discrimination." *Id.* at Syl. Pt. 2 (internal citation omitted). "[A] plaintiff, who is age forty or older, pursuing an age discrimination claim…may satisfy the third prong of the prima facie age discrimination test…by presenting evidence that he/she was replaced by a 'substantially younger' employee." *Id.* at Syl. Pt. 4 (internal citations omitted).

After a plaintiff alleging employment discrimination establishes a prima facie case, the burden "shifts to the employer to come forward with a legitimate, nondiscriminatory reason for its actions." *Skaggs v. Elk Run Coal Co.*, 479 S.E.2d 561, 582 (W. Va. 1996). If it does so, the burden shifts back to the plaintiff to "prove that the proffered legitimate reason is a mere pretext rather than the true reason for the challenged employment action." *Id.*

Mr. Farley testified that Sheriff Linville commented on his age, calling him an old man or saying he looked old, on a couple of occasions, though he could not recall the exact comments, the

context, or when they occurred. He testified that he believed they were toward the end of his employment. Mr. Farley's position was not filled after his termination. Two of his superior officers were, like him, in their mid-fifties to early sixties. Mr. Farley's position was being eliminated as of July 2018 due to budget cuts by the county commission, and so he was not replaced by a new employee of any age. Nothing in the record before the Court establishes a connection between Sheriff Linville's alleged comments and Mr. Farley's termination. Even if the Court presumed that Mr. Farley's testimony that Sheriff Linville's comments on his age sufficed to establish a prima facie case, the Defendants have presented evidence of a non-discriminatory reason for his termination: his absenteeism and tardiness without proper notice. He has presented no evidence to support a finding that the Defendants' proffered legitimate reason is pretextual. Therefore, the Court finds that the Defendants are entitled to summary judgment as to Count 3.

### D. Count 4 – Intentional Infliction of Emotional Distress

In West Virginia, the tort of outrage, or intentional infliction of emotional distress, follows the Restatement of Torts (Second): "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." Syl. pt. 6, *Harless v. First Nat. Bank in Fairmont*, 289 S.E.2d 692, 694 (W. Va. 1982). The West Virginia Supreme Court has established the following elements:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress;

>and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Syl. pt. 3, *Travis v. Alcon Labs., Inc.*, 504 S.E.2d 419, 421 (W. Va. 1998) (reaffirmed in *Hatfield v. Health Mgmt. Associates of W. Virginia*, 672 S.E.2d 395, 404 (W. Va. 2008)). The court further explained that "whether conduct may reasonably be considered outrageous is a legal question, and whether conduct is in fact outrageous is a question for jury determination." *Id.* at Syl. pt. 4.

Courts have struggled to determine whether conduct may reasonably be considered outrageous. *Courtney v. Courtney*, 413 S.E.2d 418, 422 (W. Va. 1991) (reviewing several cases considering the question). Plaintiffs must make a showing that "the defendant's actions toward the plaintiff were atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency" and be viewed as intolerable in a civilized society. *Travis*, 504 S.E.2d at 425. "[C]onduct that is merely annoying, harmful of one's rights or expectations, uncivil, mean-spirited, or negligent does not constitute outrageous conduct. On the other hand, outrageous conduct can include physical violence that causes bodily harm and emotional distress." *Courtney*, 413 S.E.2d at 423–424 (internal citations removed).

Given that there is not sufficient evidence to permit any of the claims alleging that the Plaintiff's termination was unlawful to proceed, there is clearly not evidence that it constitutes intentional infliction of emotional distress. Wrongful termination alone would not be sufficient, even if there were evidence to support those claims. Mr. Farley testified that Sheriff Linville left him a voicemail informing him that his employment was terminated, and a secretary provided him with a letter briefly stating the reason for his termination. There is no evidence that the Defendants terminated him in a way that was public, humiliating, or otherwise beyond the bounds of decency. Therefore, the Court finds that the Defendants have met their burden of establishing

that they are entitled to judgment as a matter of law with respect to Count 4. Resolving any factual disputes in the Plaintiff's favor and giving him the benefit of all inferences, he has not put forth evidence that would establish a genuine dispute of material fact that would permit a jury to find in his favor as to any claim alleged in the complaint.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that *Defendants Lincoln County Commission D/B/A Lincoln County Sheriff's Office and Gary Linville Individually and in His Capacity as Lincoln County Sheriff's Motion for Summary Judgment* (Document 31) be **GRANTED**.

The Court **DIRECTS** the Clerk to send a certified copy of this Order to counsel of record and to any unrepresented party.

ENTER: March 25, 2022

*Irene C. Berger*
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA